U. S. RUBBER Co. *v.* NORTHERN.

5-2902                                    366 S. W. 2d 186

Opinion delivered April 1, 1963.

*Rose, Meek, House, Barron, Nash & Williamson,* by *J. W. Barron,* for appellant.

*Hall, Purcell & Boswell,* for appellee.

PAUL WARD, Associate Justice. Appellee, Dalton O. Northern, operated a filling station at Benton for many years. In 1952 he entered into a written agreement with appellant, United States Rubber Company, to handle its automobile tires. Appellant guaranteed its tires against defective materials and workmanship. Under the agreement appellee was to make adjustments on tires when purchasers complained of defects. The way in which these adjustments were to be made is the real issue in this litigation.

*How this litigation arose.* The written agreement under which the parties operated was renewed (by a new instrument) nearly every year from 1952 to 1958 but the agreement relative to adjustments is, in substance, the same in all the written agreements. During these years appellee purchased tires from appellant, resold them to his customers, and made a large number of adjustments.

When the parties dissolved their business relations in 1959, it was found that appellee owed appellant about $2,300 for merchandise purchased. Accordingly, appellee

executed three notes—all payable in 1959. When appellee failed to make payment appellant filed suit on July 29, 1960. Since appellee, in effect, confessed judgment, that item is no longer an issue.

On October 28, 1960 appellee filed a counterclaim (to the above mentioned complaint) which, in effect, stated: (a) the written contract is admitted; (b) according to the written agreement the company "guaranteed unconditionally its tires and tubes against defective workmanship and material without limit as to time or mileage"; (c) according to agreement appellee was to adjust with his customers tires which were found to be defective; (d) after such adjustments the company was to reimburse appellee for all his costs and expenses in making the adjustments; (e) tires delivered to him by the company during 1955, 1956, 1957, 1958, and the first part of 1959 were for the most part defective in both workmanship and marterials and were of an inferior nature which resulted in appellee having to make numerous adjustments; (f) the cost to appellee in making these adjustments during said years was $27,533.95; and, demand for said amount had been made on and refused by the company. In reply, appellant denied every material allegation in the counterclaim.

A trial resulted in a jury verdict in favor of appellee (on his counterclaim) and against appellant for the sum of $12,600 (later, apparently, adjusted to $9,854.01).

At the close of all the testimony appellant moved for a directed verdict in its favor. The trial court denied the motion, which action, in our opinion, constituted reversible error.

*The Issue.* We set out below certain portions of the written agreements which are pertinent to the main issue in this case.

(a) The company's guarantee reads:

"Every tire or tube of our manufacture, bearing our name and serial number is guaranteed to be free from defects in workmanship and material without limit as to time or mileage. *If our examination* shows such tire

or tube has failed under the terms of this guaranty, we will either repair it or make a reasonable allowance on the purchase of a new tire or tube.'' (Emphasis supplied.)

(b)   Regarding adjustments the agreements provide that appellee:

''Would handle adjustments of the Company's merchandise in accordance with the terms of its policy for adjustment in effect from time to time.

*          *          *

''. . . *shall refer*, in accordance with the Company's established procedure, *all claims* for adjustments or replacements of tires *to the Company and shall await the Company's approval and instructions before making any adjustment or replacement on behalf of the Company.*'' (Emphasis supplied.)

The agreements further provide:

''This contract constitutes the entire agreement between the parties and supercedes all prior or contemporaneous agreements, written or oral, of every sort.

''This agreement is not subject to change or modification by any verbal statements or agreements, or by trade customs of any kind, or by written communication of any kind except when signed by Sales Manager of the Company or other properly authorized person on his behalf.''

From the above it seems apparent that the written agreement invested appellant with the right to say when adjustments could or could not be made. In spite of this, however, appellee seeks now to recover from appellant for adjustments which appellant had admittedly rejected. As we understand appellee's position he admits he cannot recover under the terms of the written agreement. We take this to be true because, at the close of his testimony, he asked the court for permission to proceed on the theory that the written agreement was changed by an oral agreement, and that such oral agreement gave

him the exclusive right to make adjustments regardless of whether appellant approved or disapproved the same. There are two reasons why we cannot accept appellee's contention.

*One.* Appellee bases his claim on adjustments made as early as December 14, 1955 and as recent as September 2, 1958, but he does not fix the date of the alleged oral agreement. It is apparent however that, in order to substantiate his earliest claim, the oral agreement must have been in existence prior to December 14, 1955. We find however that appellee signed a written agreement on November 25, 1957 which contains the following language:

"This contract constitutes the entire agreement between the parties and supersedes all prior or contemporaneous agreements, written or oral, of every sort."

The same language also appears in the written contract signed by the parties on January 20, 1958. The case of *Dunlop Tire & Rubber Corporation* v. *Fred E. Thompson, et al.,* (Ark. 1959) 273 F. 2d 396, is very similar both as to facts and issues to the case here under consideration, and is decisive against appellee's contention here. Pertinent here is the following paragraph found in that opinion:

" 'When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.' "

*Two.* Aside from what we have said above, we find no substantial evidence in the record to support a finding that appellant orally agreed to waive its right to reject adjustments made by appellee. There is evidence that appellee did make adjustments without first submitting the tires to appellant for its approval or disapproval, but this in no way tends to prove appellant waived its right to reject adjustments already made by appel-

lee. The record is replete with evidence that appellant did, through the years 1955 to 1959, exercise its right to reject or disapprove adjustments previously made by appellee. Appellee could not deny but readily admitted that he knew appellant never ceased to exercise its right to reject. This was made clear by appellee's own testimony as to how the claims for adjustments were made:

"Q.  And in numerous instances the company would pay the claim and in numerous instances they would refuse the claim, is that correct?

"A.  Right.

"Q.  And the controversy that we are squabbling about today is the claims they did not pay, the claims the company refused, is that correct?

"A.  Yes.

"Q.  And that went on during the years '57, '56, and '55, is that correct?

"A.  Right."

At another time appellee testified that each time he sent in an adjustment he had made and appellant declined to allow it, appellant ". . . would send me back a letter on each tire that was turned down". In view of the above state of the record we are driven to the conclusion that the trial court should have directed a verdict in favor of appellant. The judgment of the trial court is reversed as to appellee's counterclaim and said cause of action is dismissed.

Reversed and dismissed.